IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:95-CR-41-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| LAMONT FLEMING, | ) | |
| | ) | |
| Defendant. | ) | |

On November 18, 2024, Lamont Fleming ("Fleming" or "defendant")[1] filed a motion for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 1365] and filed a memorandum and numerous documents in support [D.E. 1366]. Fleming also filed under seal three reports that two mitigation specialists prepared for Fleming's criminal trial [D.E. 1372].[2] On January 9, 2025, the United States responded in opposition [D.E. 1380] and filed a copy of Fleming's vaccination record [D.E. 1378]. On January 23, 2025, the United States moved for leave to file an amended response in opposition to correct typographical errors in its original response in opposition [D.E. 1382] and attached its proposed amended response in opposition [D.E. 1382-1]. That same day, the court granted the United States leave to file an amended response in opposition [D.E. 1383]. On February 3, 2025, Fleming replied [D.E. 1384]. As explained below, the court denies Fleming's motion for compassionate release.

---

[1] The clerk shall correct the spelling of Fleming's name on the docket.

[2] The court granted Fleming's motion to seal the three reports [D.E. 1372]. Thus, the court refers to the three reports by citing the order granting the motion to seal (i.e., [D.E. 1372]).

I.

On July 10, 1996, Fleming pleaded guilty to racketeering in violation of 18 U.S.C. § 1961(1) and (5) and § 1962(c) (count one) and two counts of murder in aid of racketeering and aiding and abetting in violation of 18 U.S.C. § 1959(a)(1) and § 2 (counts five and nine). See [D.E. 276]. Fleming and his associates operated a large-scale drug enterprise in New York and North Carolina. See Presentence Investigation Report ("PSR") [D.E. 907] ¶¶ 11–24. Fleming led the multi-year racketeering operation and was responsible for distributing at least 7.2 kilograms of crack cocaine. See id. at ¶ 45. Fleming also murdered two people in revenge killings. See United States v. Celestine, 43 F. App'x 586, 589 (4th Cir. 2002) (per curiam) (unpublished). In one of the murders, Fleming and his associates kidnapped their victim, took her to a wooded area, and Fleming shot her twice in the head. See PSR ¶¶ 33–36. In the other, Fleming and his associates went to the victim's house, and Fleming shot the victim several times. See id. at ¶ 37. Fleming told an associate that he committed the murders "for their cause and principle." Id. Fleming also participated in the attempted murder of another person. See id. at ¶¶ 31–32, 43.

On March 12, 1997, the court held Fleming's sentencing hearing. See [D.E. 551]; Sent. Tr. [D.E. 905]. The court calculated Fleming's offense level to be 43, his criminal history category to be IV, and his guideline range to be life imprisonment. See Sent. Tr. 9–10. Counts five and nine required mandatory life sentences. See 18 U.S.C. § 1959(a)(1); PSR ¶ 104. Before hearing arguments from counsel, the court emphasized the "seriousness of the violence that surrounded" Fleming's case. Sent. Tr. 11. After considering the arguments of counsel, the court sentenced Fleming to life imprisonment on each count to run concurrently. See id. at 15; [D.E. 551]. Fleming did not appeal.

On December 14, 1998, Fleming moved to vacate, set aside, or correct his life sentences under 28 U.S.C. § 2255. See [D.E. 603, 610, 611]. On September 2, 1999, the court granted the government's motion to dismiss, dismissed Fleming's section 2255 motion, and denied a certificate of appealability. See [D.E. 614, 615]. Fleming appealed. See [D.E. 615, 622, 626]. On February 1, 2001, the United States Court of Appeals for the Fourth Circuit denied a certificate of appealability and dismissed Fleming's appeal. See [D.E. 638, 644].

On June 20, 2017, August 2, 2017, and January 22, 2020, Fleming moved for the court to release him from his obligation to pay restitution. See [D.E. 942, 945, 1032]. The court denied the motions. See [D.E. 1081].

On April 14, 2020, Fleming moved pro se for a sentence reduction under the First Step Act. See [D.E. 1041]. On September 12, 2020, Fleming, through counsel, filed a memorandum in support. See [D.E. 1056]. On October 28, 2020, the United States responded in opposition [D.E. 1068]. On October 29, 2020, the probation office filed a modification to the PSR [D.E. 1069]. On December 15, 2020, the Honorable Malcolm J. Howard denied Fleming's motion. See [D.E. 1080]. Fleming appealed. See [D.E. 1092]. On June 21, 2021, after Judge Howard transitioned to inactive senior status, the case was reassigned to the undersigned. On April 28, 2022, the Fourth Circuit vacated the court's judgment and remanded for reconsideration in light of the United States v. McDonald, 986 F.3d 402 (4th Cir. 2021). See [D.E. 1189, 1190, 1207]. After considering McDonald, the entire record, Fleming's motion, and the government's persuasive response, the court denied Fleming's motion for a sentence reduction. See [D.E. 1227]. Fleming appealed. See [D.E. 1230]. On August 17, 2023, the Fourth Circuit affirmed this court's ruling. See United States v. Fleming, No. 22-7015, 2023 WL 5289377 (4th Cir. Aug. 17, 2023) (per curiam) (unpublished). On

3

September 29, 2023, the Fourth Circuit denied Fleming's petition for rehearing en banc. See [D.E. 1330].

II.

A court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Federal Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022); United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021) superseded by statute on other grounds as recognized by United States v. Davis, 99 F.4th 647, 654 (4th Cir. 2024); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020) superseded by statute on other grounds as recognized by Davis, 99 F.4th at 654. A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see United States v. Ferguson, 55 F.4th 262, 268 (4th Cir. 2022). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

4

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 585 U.S. 109, 115–20 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; McDonald, 986 F.3d at 412; United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); Davis, 99 F.4th at 659; McCoy, 981 F.3d at 286 n.9.

The Sentencing Commission policy statement in U.S.S.G. § 1B1.13 applies to a defendant's compassionate release motion. See U.S.S.G. § 1B1.13(a). Section 1B1.13(b) lists several extraordinary and compelling reasons, including (1) a defendant's medical circumstances; (2) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her imprisonment term; (3) a defendant's family circumstances; (4) a defendant who suffered sexual abuse, or physical abuse with serious bodily injury, at the hands of those with custody over the defendant while serving the term of imprisonment sought to be reduced; (5) any other reasons similar in gravity to those described in paragraphs (1) through (4) of the policy statement; or (6) a qualifying change in the law that

5

produces a gross disparity between the defendant's unusually long sentence being served and the sentence likely to be imposed at the time the motion is filed, after fully considering the defendant's individual circumstances. See U.S.S.G. § 1B1.13(b). A defendant's rehabilitation alone is not an extraordinary or compelling reason, but it "may be considered in combination with other circumstances in determining whether and to what extent a reduction . . . is warranted." U.S.S.G. § 1B1.13(d). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. U.S.S.G. § 1B1.13(e).

Fleming seeks compassionate release under section 3582(c)(1)(A).[3] Fleming argues his case presents extraordinary and compelling circumstances warranting a sentence reduction. In support, Fleming cites (1) his age at the time of his offenses, (2) the length of his sentence, (3) the then-mandatory guidelines and life sentences on counts five and nine, (4) his rehabilitative efforts,

---

[3] 18 U.S.C. § 3582(c)(1)(A) states:

the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

    (i)    extraordinary and compelling reasons warrant such a reduction; or

    (ii)   the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

(5) his remorse and acceptance of responsibility, (6) his character as described by his family and friends, (7) the conditions of confinement he experienced during the COVID-19 pandemic, and (8) his underlying health issues and the continued risk of severe COVID-19 infection. See [D.E. 1336] 13–26. Fleming also argues that the section 3553(a) factors favor reducing his three concurrent life sentences to time-served. See id. Furthermore, Fleming argues that he does not present a danger to any individual or the community and provides the details of his release plan if the court were to reduce his sentence. See id. at 33–37.

On July 18, 2024, Fleming applied to his warden for compassionate release. See [D.E. 1366-6]. Fleming's warden did not respond to Fleming's request. See [D.E. 1366] 12–13. Thus, the court addresses Fleming's motion on its merits. See Ferguson, 55 F.4th at 268; Muhammad, 16 F.4th at 129–30.

As for Fleming's age (i.e., 52), under the "age of the defendant" policy statement, a court may consider granting compassionate release if "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13(b)(2). Fleming does not rely on the "age of the defendant" policy statement. Instead, Fleming argues that his age at the time of his deadly offense conduct limited his ability to make rational decisions. See [D.E. 1366] 15–16. Fleming cites Miller v. Alabama, 567 U.S. 460 (2012), concedes that Miller does not "directly" apply to him, but argues that "the reasoning underlying Miller and its progeny . . . provide critical guidance to this [c]ourt as it considers" Fleming's motion for compassionate release. [D.E. 1366] 13. Fleming then notes that he engaged in his deadly offense conduct when he was 20, 21, and 22. See [D.E. 1366] 13; PSR ¶¶ 9–46, 50.

7

Miller and the other cases that Fleming cites cannot bear the weight Fleming places on them. In Miller, the Supreme Court considered the murder convictions and mandatory life without parole sentences of two 14-year-old boys. See Miller, 567 U.S. at 465. Likewise, the other cases Fleming cites involve defendants who were significantly younger than Fleming at the time of his violent offense conduct. See Jones v. Mississippi, 593 U.S. 98, 101–02 (2021) (affirming the discretionary life sentence of a 15-year-old defendant convicted of murdering his grandfather); Montgomery v. Louisiana, 577 U.S. 190, 194 (2016) (holding Miller retroactive to cases on collateral review in a case involving a 17-year-old sentenced to life for murdering a police officer); Thompson v. Oklahoma, 487 U.S. 815, 818–19 (1988) (holding that the Eighth Amendment prohibited the execution of a 15-year-old convicted of first-degree murder). These cases do not support Fleming's argument seeking release.

Although the court recognizes the discussion of brain development and youthful impulsivity in Miller, 567 U.S. at 471–72, Fleming did not commit his crimes in a flash of youthful impulsivity. Rather, Fleming and his associates operated a large-scale, sophisticated drug trafficking enterprise in New York and North Carolina for many years. See PSR ¶¶ 11–24. Fleming led the multi-year racketeering operation and was responsible for distributing at least 7.2 kilograms of crack cocaine. See id. at ¶ 45. Moreover, Fleming did not murder his victims impulsively. Instead, Fleming planned the murders and murdered his victims in calculated revenge killings that he described to an associate as motivated by "cause and principle." Id. at ¶ 37. On this record, reducing Fleming's sentence due to his age at the time of his offense conduct does not comport with U.S.S.G. § 1B1.13(b)(2) or any policy statement.

As for the length of Fleming's sentence and the then-mandatory guidelines and life sentences on counts five and nine, the "unusually long sentence" policy statement states that if a

8

"defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such a change would produce a gross disparity between the sentence being served and the sentence likely to be imposed when the motion is filed, and only after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6) (emphasis added). In exercising its discretion, the court must consider the section 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A).

Fleming argues that the length of his sentence, his "age at the time of his offense . . . , his age today . . . and the almost 30 years [sic] imprisonment he has already served contribute to the conclusion that extraordinary and compelling reasons exist for a reduction of his sentence to time-served." [D.E. 1366] 17 (quotation omitted). Fleming also argues that Judge Howard imposed his life sentences as required by statute "and the then-mandatory guidelines . . . without any individualized assessment as to what a fair, just and appropriate sentence would be." Id. According to Fleming, "even though his life sentence[s] might have been constitutional when imposed, not all that is constitutional is just." Id. at 19 (quotation omitted).

The court rejects Fleming's argument. Notably, Fleming does not rely on section 1B1.13(b)(6). Moreover, even though the guidelines are no longer mandatory, Congress has not changed the law concerning count one. Cf. [D.E. 1227] 3–8. If Fleming were sentenced today and because of the two murder predicates, the statutory maximum on count one remains life imprisonment. See 18 US.C. § 1963(a); N.C. Gen. Stat. § 14–17(a). Thus, reducing Fleming's sentence due to the length of his sentence or in light of the then-mandatory guidelines and life

9

sentences on counts five and nine does not comport with U.S.S.G. § 1B1.13(b)(2) or any policy statement.

Next, Fleming argues that his rehabilitation efforts, his remorse and acceptance of responsibility for his crimes, and his character as described by Fleming's family and friends constitute extraordinary and compelling circumstances. See id. at 19–25. Fleming does not rely on any specific policy statement to make these arguments.

To begin, Fleming's rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); Davis, 99 F.4th at 659; McCoy, 981 F.3d at 286 n.9. Although the court commends Fleming for participating in programming, completing work assignments, and maintaining a discipline-free record since 2009, the court expects such efforts from all inmates. Davis, 99 F.4th at 658–59; see, e.g., United States v. Mitchell, No. 8:11-CR-525, 2024 WL 129761, at *4 (D. Md. Jan. 11, 2024) (unpublished); United States v. Anderson, No. 3:17CR80-08, 2023 WL 7285411, at *3 (E.D. Va. Nov. 3, 2023) (unpublished); United States v. Baines, No. 1:13CR255-2, 2022 WL 706779, at *5 (M.D.N.C. Mar. 9, 2022) (unpublished). Furthermore, Fleming's remorse, acceptance of responsibility, and character do not constitute extraordinary and compelling circumstances warranting a sentence reduction. Likewise, reducing Fleming's sentence on these grounds does not comport with any policy statement.

Next, Fleming argues that the BOP's COVID-19 protocols created "unusually harsh conditions of confinement" and that these conditions constitute extraordinary and compelling circumstances. [D.E. 1366] 25–26. Fleming also argues that his underlying health conditions create a continued risk of severe COVID-19 infection. See id. at 26–27.

As for the "medical circumstances of the defendant" policy statement, the policy statement requires, in part, that the defendant be "housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public

10

health emergency declared by the appropriate federal, state, or local authority;" be "at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency" because of "personal health risk factors and custodial status"; and "such risk cannot be adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1)(D). "To establish that the risk posed by COVID-19 presents an 'extraordinary and compelling reason' for release [under this subsection], a defendant must allege that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that his preexisting medical condition increases his risk of experiencing a serious, or even fatal, case of COVID-19." United States v. Brown, 78 F.4th 122, 128 (4th Cir. 2023) (quotation and alteration omitted); see High, 997 F.3d at 185. This "inquiry is multifaceted and must account for the totality of the relevant circumstances." Bethea, 54 F.4th at 832 (quotations omitted); see Hargrove, 30 F.4th at 198. Courts examine whether "an inmate shows both a particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at his prison facility." Brown, 78 F.4th at 128 (quotation omitted); see Hargrove, 30 F.4th at 196.

Fleming cites the risk of contracting COVID-19 and states that he has latent tuberculosis, hypertension, asthma, and pre-diabetes. See [D.E. 1366] 27. The wide availability of COVID-19 vaccines greatly diminishes the risk to Fleming from COVID-19 whether he is in prison or not. See, e.g., United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases). Furthermore, Fleming has received the COVID-19 vaccine. See [D.E. 1378]

11

1. Fleming fails to show any "particularized susceptibility to COVID-19." Brown, 78 F.4th at 128 (quotation omitted); see, e.g., United States v. Alston, 639 F. Supp. 3d 553, 558 (E.D.N.C. 2022), aff'd, No. 22-7312, 2023 WL 2160058 (4th Cir. Feb. 22, 2023) (per curiam) (unpublished); United States v. Spencer, 521 F. Supp. 3d 606, 611 (E.D. Va. 2021), aff'd, 853 F. App'x 833 (4th Cir. 2021) (per curiam) (unpublished).

The BOP now houses Fleming at Allenwood Low FCI. See BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (search by inmate name) (last visited June 3, 2025). The BOP has vaccinated 1351 inmates at its Allenwood complex and has only three open cases of COVID-19 among the inmates. See BOP, Inmate COVID-19 Data, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (ALX) (last visited June 3, 2024). The BOP's aggressive vaccination efforts and robust COVID-19 procedures decrease Fleming's risk of contracting the disease at Allenwood Low FCI. See id. Reducing Fleming's sentence because of his alleged risk factors and the general risk of COVID-19 in prison does not comport with U.S.S.G. § 1B1.13(b)(1)(D). See 18 U.S.C. § 3582(c)(1)(A); see, e.g., Davis, 99 F.4th at 655–56.

To the extent Fleming argues his latent tuberculosis, hypertension, asthma, and pre-diabetes are extraordinary and compelling circumstances, the relevant policy statement requires, in part, that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Fleming's conditions are not extraordinary and compelling reasons for release. See, e.g., Hargrove, 30 F.4th at 191–200 (affirming the district court's denial of compassionate release to an inmate with asthma, high blood pressure, and obstructive sleep apnea); Moore v.

United States, No. 2:02-CR-217, 2022 WL 5101681, at *3 (E.D. Va. Oct. 4, 2022) (unpublished) ("[S]table Type II diabetes is not an extraordinary and compelling reason for release."); United States v. Norman, No. 4:11CR101, 2021 WL 5003243, at *4–6 (E.D. Va. Oct. 28, 2021) (unpublished) (denying compassionate release to an inmate diagnosed with latent tuberculosis); United States v. Pultz, No. 5:03-CR-30113-5, 2021 WL 2152511, at *2–3 (W.D. Va. May 26, 2021) (unpublished) (denying compassionate release to inmate diagnosed with hypertension, type two diabetes, obstructive sleep apnea, and obesity); United States v. Taylor, 3:19cr31, 2021 WL 244801, at *1 (W.D.N.C. Jan. 25, 2021) (unpublished) ("Tuberculosis is not among the known conditions which places an individual at an increased risk of severe illness from COVID-19."); United States v. Buchanan, No. 3:18CR199, 2020 WL 5026849, at *2 (E.D. Tenn. Aug. 24, 2020) (unpublished) (denying compassionate release to inmate diagnosed with hypertension); United States v. Mayfield, Cr. No. 07-801, 2020 WL 3604090, at *2–3 (D.N.J. July 2, 2020) (unpublished) (denying motion for compassionate release based on health diagnosis even with approaching release date). Fleming also fails to show that his latent tuberculosis, hypertension, asthma, and pre-diabetes inhibit his ability to provide self-care in his correctional facility. Reducing Fleming's sentence because of his latent tuberculosis, hypertension, asthma, and pre-diabetes does not comport with U.S.S.G. § 1B1.13(b)(1)(B).

More generally, reducing Fleming's sentence because of prison conditions caused by the COVID-19 pandemic, and without any particularized risk of infection to Fleming, does not comport with U.S.S.G. § 1B1.13(b)(1)(D). See 18 U.S.C. § 3582(c)(1)(A); see, e.g., Davis, 99 F.4th at 655–56. Indeed, if the court recognized the alleged pandemic-related hardships that Fleming cites as sufficient grounds for compassionate release, then compassionate release would become the "exception that swallows the general rule of finality." United States v. Hancock, No.

1:06-CR-206-2, 2021 WL 848708, at *5 (M.D.N.C. Mar. 5, 2021) (unpublished). Thus, the court rejects Fleming's argument.

The court has considered each of Fleming's arguments and finds that reducing Fleming's sentence would not comport with any policy statement. Fleming fails to establish the existence of extraordinary and compelling circumstances warranting a sentence reduction. Furthermore, the court rejects Fleming's contention that his arguments, "considered collectively," present extraordinary and compelling circumstances warranting a sentence reduction. See [D.E. 1366] 13, 27. The court has considered collectively Fleming's arguments and the entire record and finds that no extraordinary and compelling circumstances warranting a sentence reduction exist.

As for the "other reasons" policy statement, the court assumes without deciding that Fleming's age at the time of his offenses, the length of Fleming's sentences, the then-mandatory guidelines and life sentences on counts five and nine, Fleming's underlying health issues and his risk of severe COVID-19 infection, and the prison conditions caused by the COVID-19 pandemic are extraordinary and compelling reasons under section 3582(c)(1)(A). The court also assumes without deciding that the policy statement requires the court to consider Fleming's remorse, acceptance of responsibility, and character. The section 3553(a) factors, however, counsel against reducing Fleming's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32. Fleming is 52 years old and engaged in prolonged, horrifying criminal conduct. Fleming and his associates operated a large-scale drug enterprise in New York and North Carolina. See PSR ¶¶ 11–24. Fleming led the multi-year racketeering operation and was responsible for distributing at least 7.2 kilograms of crack cocaine. See id. at ¶ 45. Fleming also murdered two people in revenge killings. See Celestine, 43 F. App'x at 589. In one of the murders, Fleming and his associates kidnapped their victim, took her to a wooded area, and Fleming shot

14

her twice in the head. See PSR ¶¶ 33–36. In the other, Fleming and his associates went to the victim's house, and Fleming shot the victim several times. See id. at ¶ 37. Fleming told an associate that he committed the murders "for their cause and principle." Id. Fleming also participated in the attempted murder of another person. See id. at ¶¶ 31–32, 43.

When Fleming engaged in his deadly criminal conduct, violence defined Fleming. When sentenced for his federal offense conduct, Fleming had state court convictions for second degree robbery (during the commission of which Fleming and his associates beat a woman with a stick and broke her arm) and criminal possession of a weapon. See PSR ¶¶ 50–51. The court has considered the entire record, Fleming's age at the time of his offenses, the length of Fleming's sentences, the then-mandatory guidelines and life sentences on counts five and nine, Fleming's underlying health issues and his continued risk of severe COVID-19 infection, the prison conditions caused by the COVID-19 pandemic, Fleming's remorse and acceptance of responsibility, Fleming's character, and all relevant factors under the section 3553(a) factors. Having considered the entire record, as well as Fleming's arguments, and the need to punish Fleming for his deadly criminal behavior, to incapacitate Fleming, to promote respect for the law, to deter others, and to protect society, the court denies Fleming's motion for compassionate release. See, e.g., Concepcion v. United States, 597 U.S. 481, 498–501 (2022); Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 480–81; United States v. Smith, 75 F.4th 459, 464–66 (4th Cir. 2023); United States v. Troy, 64 F.4th 177, 185 (4th Cir. 2023); United States v. Reed, 58 F.4th 816, 821–24 (4th Cir. 2023); United States v. Roane, 51 F.4th 541, 551–53 (4th Cir. 2022); Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th

Cir. 2020); United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

### III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 1365].

SO ORDERED. This __4__ day of June, 2025.

*J. Dever*
JAMES C. DEVER III
United States District Judge